| | | |
|---|---|---|
| SHIRLEY A. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:05CV1183 MLM |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action brought pursuant to Title 42 U.S.C. § 405(g) for judicial review of the final

decision of Jo Anne Barnhart ("Defendant") denying the application for Social Security benefits

under Title II of the Social Security Act, 42 U.S.C. § 401 et. seq. filed by Plaintiff Shirley A. Davis

("Plaintiff"). Plaintiff has filed a brief in support of her Complaint. Doc. 7. Defendant has filed a brief

in support of her Answer. Doc. 8. The parties have consented to the jurisdiction of the undersigned

United States Magistrate Judge pursuant to 28 U.S.C. § 636 (c). Doc. 9.

## I.
## PROCEDURAL HISTORY

On October 2, 2002, Plaintiff filed an application for disability insurance benefits alleging a

disability onset date of October 31, 2001, based on pain in her head to her tailbone, numbness on the

right side of her body, leg cramps, and a ruptured rectal seal. Tr. at 46-48. Plaintiff's application was

denied initially and she requested a hearing before an ALJ.[1] Tr. at 26-32. A hearing was held before

---

[1]    Missouri is one of several test states participating in modifications to the disability
determination procedures which apply in this case. See 20 C.F.R. §§ 404.906 and 404.966
(2002). These modifications include, among other things, the elimination of the reconsideration
step and at times, the elimination of the Appeals Council review step in the administrative appeals

ALJ Robert G. O'Blennis on January 17, 2003. Tr. at 14. The ALJ found that Plaintiff was not disabled at any time through the date of the decision, November 14, 2004. Tr. at 19. Plaintiff filed a timely request for review with the Appeals Council which denied Plaintiff's request on May 25, 2004. Tr. at 4-6. In denying Plaintiff's request for review the decision of the ALJ became the final decision of the Commissioner.

## II.
## TESTIMONY BEFORE THE ALJ

Plaintiff testified that she was 56 years of age at the time of application for disability benefits; that she is right-handed; that she has a ninth grade education; and that she later received her GED. Tr. at 183-84). Plaintiff further testified that she last worked in March 2001 at a trucking company where she drove eighteen wheelers; that she began driving trucks in 1987; that her husband bought the trucks and she drove one of them; that she drove only one trip in 2001 because of the difficulty she had performing her job; that she had driven a truck since 1987;that in 2001 she and her husband lost the trucks because fuel prices went up; that when driving a truck she was required to load locks on products to secure them; that locking and loading required her to lift and carry a metal bar weighing-thirty five to forty pounds; that she had difficulty performing this task; that this job also required that she throw straps to secure items on flat beds; and that when she last worked driving a truck this task was difficult for her to perform. Tr. at 186-88, 196-98. Plaintiff further testified that she stopped working due to pain in her back, neck, and hands. Tr. at 200.

Plaintiff said that she had to use her right hand to shift gears in the eighteen wheeler; that this was difficult due to an accident which occurred in 1968 where she lost a thumb and the fifth finger on her right hand and lost her thumb on her left hand. Tr. at 198. Plaintiff further said that she had

process. See id. Therefore, Plaintiff's appeal in this case proceeded directly from her initial denial of benefits to the administrative law judge level.

difficulty hanging onto the wheel, shifting and sitting when she drove a truck. Tr. at 199. Plaintiff testified that she began having pain in her wrists in 2000; that she experiences shooting pain which she rated as a nine on a scale of one to ten; that when she takes her medication the pain is a six on a scale of one to ten; and that she took Vioxx for the pain and experienced acid reflux as a result of taking the medication. Tr. at 200.

Plaintiff further testified that she received back manipulation and pain pills during 2001 and wore a wrist brace; that she received treatment, including manipulation, from a chiropractor for her back and neck; that the treatments only helped for one day and then the pain would return; that the pain was between her shoulders; that this pain was excruciating; and that she also received acupuncture. Tr. at 186-89.

### III.
### MEDICAL EVIDENCE

Handwritten notes from David A. Mullen, D.O., which are not legible, reflect that Plaintiff was seen approximately three times in 1992, three times in 1993, three times in 1995, one time in 1996, and two times in 1998. Notes on several of these dates reference neck and back pain. Tr. at 140-41.

Records from the office of Timothy L. Wulfert, D.C.,[2] reflect that Plaintiff was seen on June 21, 1994 for evaluation of back pain. Chiropractor's notes of this date state that x-rays of Plaintiff's back showed that she had osteoarthritis in her back; that she had border-line lupus; and that Plaintiff reported that her hands and joints swell which causes her difficulty in handling the wheel when she drives a truck. Tr. at 106-114.

---

[2] In her brief Plaintiff states that she actually received chiropractic treatment from Donna Yates, RNCS.

Records further reflect that Plaintiff was seen by a chiropractor on the following dates for treatment of back and neck pain: September 30, October 15, November 13, and December 14, 1998; January 27, March 23, October 28, 1999; May 2000; September 28, November 10, and December 8 and 29, 2000; January 16, March 22, and September 4, 2001; and February 12, March 19, April 9, and September 16, 2002. Tr. at 115-120.

Medical records of Dr. Mullen reflect that Plaintiff was seen on February 16, 2000, for "DOTCPX." Records further reflect that Plaintiff was seen on May 15, 2000, because her hand was swollen and bruised and that she had previously had a finger removed and two fingers fused together. Tr. at 143.

A radiology report signed by Kenneth D. Smith, M.D., dated May 15, 2000, states that Plaintiff had pain and swelling; that she hit her hand on a door; and that the impression was prior amputation of the thumb with loss of normal palmar arch and acute proximal left fifth metacarpal fracture with mild displacement. Tr. at 153.

Records of Kelly Hartel, M.D., reflect that Plaintiff was seen by this doctor in July 2001 at which time Plaintiff complained of pain in her right shoulder and right arm; that she could not raise her sling arm; that she got out of breath easily; that she could not tolerate the sun; that she had red spots on her feet; that her eyes hurt; and that she was holding fluid. Tr. at 125.

Dr. Hartel reported that Plaintiff was seen in September 2001 on which date Dr. Hartel reported that Plaintiff was diagnosed with shingles. Tr. at 125. Medical records from Dr. Mullen also reflect that Plaintiff was seen on September 5, 2001 for shingles and numbness around her breast. Tr. at 144.

Plaintiff was seen in the Emergency Room in September 2001 complaining of back pain. Tr. at 128.

Dr. Hartel reported that Plaintiff was seen in October 2001 on which date Plaintiff said that her back still hurt; that the spots on her feet were gone; that she was not holding as much water; that she was taking Valtrex for shingles; and that she was prescribed hydrocodone for pain which she was unable to take  Tr. at 125.  Medical records of October 1, 2001, state that the assessment on this date was that Plaintiff had back/shoulder pain; that she was given Vioxx samples and ice/heat were recommended for this pain; and that her shingles were resolving.  Tr. at 126.

Dr. Mullen's records reflect that Plaintiff was seen on December 1, 2003, for her neck; that she had this problem for a long time; and that the assessment was upper extremity neuropathy.  Tr. at 147.

Dr. Mullen's records reflect that Plaintiff was seen on July 23, 2003, for neck, back, arm, wrist, and hip pain; that she had this problem for months; that her hands became numb when driving; and that the assessment included median neuritis and sciatica.  Tr. at 145.

Glenn M. Sherrod, D.O., F.A.A.N., reported on December 9, 2003, that Plaintiff had an electromyogram and a nerve conduction study; that multiple major muscle groups were studied; that there were no spontaneous features at rest; that motor units recruited were of normal configuration; that interference patterns were moderately full; and that the nerve conduction studies showed delay in the median nerve motor and sensory terminal latencies.  Dr. Sherrod further reported that "collectively, these electrical findings were consistent with bilateral median nerve compression at the wrist-as seen in carpal tunnel syndrome.  However, additional clinical correlation is recommended." Tr. at 136.

A neurological assessment from Mineral Area Regional Medical Center, dated March 30, 2004, states that Plaintiff was oriented and had adequate judgment and insight and fluent speech. This assessment further states that a cranial nerve exam revealed full visual fields, that palpebral

fissures and facial grimace were symmetrical, hearing was intact to spoken tones and whispers, and the tongue protruded in a midline. Tr. at 148.

Kenneth L. Miller, M.D., stated in a radiology report dated April 6, 2004, that his impression was that Plaintiff had a dilated common bile duct and that "[d]istal common bile duct stone or other obstructing lesions were difficult to exclude," and cholelithiasis. Tr. at 137.

Plaintiff's primary care physician, David O. Mullen, D.O., wrote the following in a letter dated May 26, 2004:

> Ms. Davis is a 58 year old female and has attempted working for many years as a truck driver and other assorted physical activities. This patient has a deformed left hand and wrist secondary to an accident in 1968. She also has degenerative joint disease and loss of use of the left hand with the thumb fused at the first joint and the first joints are fused at the fourth and fifth digits. She is required to utilize her right hand to do the vast majority of her work. Anything requiring dexterity skills is nearly impossible for this patient to accomplish. Her left hand acts only as a support.
>
> I feel that based on this, Ms. Davis is currently unable to maintain any kind of occupation and is totally and permanently disabled.

Tr. at 139.

## IV.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § § 416.920, 404.1529. In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § § 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities …" Id. Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations.

20 C.F.R. § § 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id. Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004); Young v. Afpel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will "review [claimants]' residual functional capacity and the physical and mental demands of the work [claimant] [has] done in the past." Id. Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § § 416.920(f), 404.1520(f). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person's with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) (holding that the at Step 5 the burden of production shifts to the Commissioner, although the Commissioner is to required to reestablish the RFC which the claimant must prove at Step 4). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Eichelberger, 390 F.3d at 590-91.

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a

reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Education and Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months …." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). The plaintiff has the burden of proving that he has a disabling impairment. 42 U.S.C. § 423(d)(1); Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993); Roach v. Sullivan, 758 F. Supp. 1301, 1306 (E.D. Mo. 1991).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health and Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 841(8th Cir. 1992); Ricketts v. Sec'y of Health and Human Servs., 849 F.2d 661, 664 (8th Cir. 1990); Jeffery v. Sec'y of Health and Human Servs., 849 F.2d 1129, 1132 (8th Cir. 1988). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health and Human Servs., 850 F.2d 425, 426 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

# V.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. <u>Onstead</u>, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. <u>Krogmeier</u>, 294 F.3d at 1022.

Plaintiff contends that at Step 2 of the sequential analysis the ALJ improperly terminated the evaluation process and that he should have terminated the analysis only if he found that Plaintiff's impairment or combination of impairments had no more than a minimal impact on her ability to work.

As stated above, at Step 2 of the sequential analysis an ALJ is required to determine if a claimant has a severe impairment or combination of impairments. "The severity Regulation adopts a standard for determining the threshold level of severity: the impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'" <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153 n.11 (1987) (quoting 20 CFR § 404.1520(c) (1986)). An impairment or combination of impairments are not severe if they are so slight that is unlikely that the claimant would be found disabled even if his age, education, and experience were taken into consideration. <u>Id.</u> at 153 ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account."). Moreover, "'[a]n impairment imposes significant limitations when its effect on a claimant's ability to perform basic work is more than slight or minimal.'" <u>Warren v. Shalala</u>, 29 F.3d

1287, 1291 (8th Cir. 1994) (quoting Cook v. Bowen, 797 F.2d 687, 690 (8th Cir. 1986)).  20 C.F.R.

§ 404.1521(b) defines basic work activities as follows:

> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include–
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Upon determining that Plaintiff did not have a severe impairment or combination of impairments as defined in the Regulations, 20 C.F.R. § 404.1520(c), the ALJ first considered Plaintiff's testimony including her testimony that she has had chronic pain in her left hand since 1968; that she lost a thumb and the tips of several fingers; that she has had severe pain in left wrist since 2000; that she alleged she was disabled due to the loss of function in her hands, chronic and recurrent back and neck pain; that she took pain medication; that she stopped driving a truck because she could no longer grip the wheel or lift a metal bar which weighed between thirty-five and forty pounds; and that she no longer drove a car except for the 5-mile trip to the store about twice a week.  Tr. at 15.

The ALJ further considered Plaintiff's testimony regarding her daily activities and that her husband stated in October 2002 that her normal activities were very limited by pain and other medical complaints.  Tr. at 15. The court notes that, in regard to her daily activities, Plaintiff testified at the hearing that she performs household chores although she does not perform them as "they should be done"; that she does laundry; that she stopped going to church two years prior to the hearing; that since 2001 she has traveled 100 miles to Kentucky and Illinois; that she watches a lot of television;

12

that she reads the newspaper; and that she maintained a flower garden. Tr. at 191-92. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987)). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff v. Barnhart, 421 F.3d 926, 930 (8th Cir.2005) (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-31 (8th Cir. 1996) (holding that a claimant's daily activities including visiting neighbors, cooking, doing laundry, and attending church were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit her complaints of debilitating pain. The court further finds that substantial evidence supports the ALJ's decision in this regard.

The ALJ considered that although Plaintiff's medical problems dated back to 1968, these problems including her alleged chronic problems with her hands and left wrist did not stop her from working as a truck driver in the early years. "Acts which are inconsistent with a claimant's assertion

of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148049 (8th Cir. 2001). "Working generally demonstrates an ability to perform a substantial gainful activity." Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (citing Nabor v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994)). 20 C.F.R. § 404.1574(a) provides that if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity. Moreover, when a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been a significant deterioration in that impairment during the relevant period. Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). The court finds, therefore, that the ALJ's considering that Plaintiff worked with her alleged impairments is consistent with the Regulations and case law and that the ALJ's decision in this regard is supported by substantial evidence.

The ALJ also considered that because Plaintiff last met the earnings requirements for Title II disability insurance benefits on December 31, 2001, in order to qualify for disability benefits she must prove that she was unable to perform substantial gainful activity on or before that date. For insured status under Title II of the Act, an individual is required to have 20 quarters of coverage in the 40-quarter period ending with the first quarter of disability. This is the so called "earnings requirement." 42 U.S.C. § 416(i)(3)(B) and § 423 (c)(1)(B). The court finds, therefore, that the ALJ's decision in this regard is consistent with the Regulations.

Next, the ALJ found that the medical evidence was inconsistent with Plaintiff's allegation of disability beginning on or before December 31, 2001. In particular, the ALJ considered Plaintiff was treated for a fractured finger on her left hand; that this problem subsided by about May 2000; that Plaintiff had chiropractic treatment for hands, back and neck pain in June 1994; that she did not receive treatment again until September 1998; that she had subsequent treatments; that Plaintiff had

shingles in July 2001 at which time she also had pain in her back and other joints; that she had emergency room attention for a rash in September 2001; that in October 2001 she still had pain in her back and shoulders but her shingles were resolving; that Plaintiff never returned for further treatment after October 2001; that EMG and nerve conduction studies showed carpal tunnel in December 2001; and that no doctor told Plaintiff to stop working in October 2001.  Tr. at 16.

The ALJ proceeded to consider that the rest of the medical evidence is dated well after the date Plaintiff was last insured, December 2001.  The ALJ noted that while Plaintiff was diagnosed with carpal tunnel before December 2001 she did not raise the possibility of surgical treatment until March 2004.  The ALJ also considered that there was no medical evidence that Plaintiff had chronic back or neck pain or of any memory impairment or other mental problem existing before the end of 2001 and that Plaintiff's chiropractic treatments were intermittent.  Indeed, the record establishes that Plaintiff had chiropractic treatment in January 1999, in May and December 2000, in July 2001, and in February and April 2002.  He concluded that through the end of 2001 Plaintiff had only slight abnormalities not significantly limiting the performance of any basic work activity and that, therefore, she did not have a severe impairment or combination of impairments.  Tr. 17.

Upon concluding that Plaintiff did not have a severe impairment or combination of impairments the ALJ also considered that Plaintiff had no documented surgery or inpatient hospitalizations; that she was not referred for physical therapy or to a pain clinic; and that she was never referred for formal treatment to a psychiatrist, psychologist or other mental health professional. The failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling pain and is properly considered by an ALJ.  Rautio v. Bowen, 862 F. 2d 176, 179 (8th Cir. 1988).  Moreover, seeking limited medical treatment is inconsistent with claims of disabling pain.

Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989).

The ALJ also considered that the record does not reflect that Plaintiff had any adverse side effects from medication which she was prescribed. The court notes that records of October 1, 2001, reflect that Plaintiff had been prescribed Valtrex for shingles; that her shingles were resolving; that she had been prescribed hydrocodone for pain which she was unable to take due to dizziness; and that on this date Plaintiff was given Vioxx samples and ice/heat were recommended for pain. Conditions which can be controlled by treatment are not disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). Additionally, pursuant to Polaski, 730 F.2d at 1322, the absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a plaintiff's complaints of disabling pain are credible. Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir. 1994). ALJ The court finds, therefore, that the ALJ properly considered that Plaintiff did not suffer adverse side effects from medications, and further finds that substantial evidence supports the ALJ's conclusion that Plaintiff does not suffer such side effects.

The ALJ also discounted a statement by Plaintiff's husband dated October 25, 2002, because Plaintiff's husband has a natural affection for Plaintiff and he, therefore, would have a natural tendency to believe her, because he is not a medical professional trained to make clinical determinations, and because his statement is inconsistent with the medical records. Plaintiff's husband did state in a Daily Activities Questionnaire that Plaintiff has trouble with everyday household activities, that in the past year Plaintiff "slowed in her activities," that she lost interest in gardening, among other things, and that she is tired more. Tr. at 92. The Eighth Circuit has frequently criticized

the failure of the ALJ to consider subjective testimony of a claimant's family and others. Robinson v. Sullivan, 956 F.2d 836, 842 (8th Cir. 1992) (holding that despite the Eighth Circuit's repeated directives that the Secretary specifically discuss each credibility determination made, the ALJ failed to state the reasons for discrediting the testimony of the claimant's wife). However, while such testimony must be considered, no case directs belief in such testimony as credible. Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988). If the ALJ is to reject such testimony, it must be specifically discussed and credibility determinations expressed. See Smith v. Heckler, 735 F.2d 312, 317 (8th Cir. 1984). In the matter under consideration the ALJ provided specific reasons for discrediting the statement of Plaintiff's husband. As such, the court finds that the ALJ's decision in this regard is consistent with the Regulations and case law and that it is supported by substantial evidence on the record as a whole.

The ALJ also considered Dr. Mullen's May 2004 letter in which this doctor opined that Plaintiff is unable to engage in any kind of occupation and that she is permanently disabled. The ALJ noted that this letter is speculative and inconsistent with the preponderance of the relevant-time medical evidence of record including some of Dr. Mullen's own records. The opinions and findings of the plaintiff's treating physician are entitled to considerable weight. Indeed, if they are not controverted by substantial medical or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000)(citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir.1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998)). However, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1985) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8thCir.1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic

data). Where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight. Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987). An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). "Medical reports of a treating physician are ordinarily entitled to greater weight than the opinion of a consulting physician." Chamberlin, 47 F.3d at 1494 (citing Matthews, 879 F.2d at 424).

A treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). Moreover, a brief, conclusory letter from a treating physician stating that the applicant is disabled is not binding on the Secretary. Ward v. Heckler, 786 F.2d 844, 846 (8th Cir.1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature."). See also Chamberlain, 47 F.3d at 1494; Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir.1994) (citing Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir.1991)); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, diagnostic evidence). On the other hand, a treating physician's observations should not necessarily be treated as conclusory where the doctor had "numerous

examinations and hospital visits" with a claimant.  See <u>Turpin v. Bowen</u>, 813 F.2d 165, 171 (8th Cir.1987).

In his letter of May 26, 2004, Dr. Mullen opines that Plaintiff is unable to engage in any work, including work requiring dexterity and her use of her hands.  While Dr. Mullen saw Plaintiff on numerous occasions over a period of years his office notes fail to support his conclusion that Plaintiff is unable to engage in any sort of work.  The court notes that Dr. Mullen's opinion that Plaintiff is unable to engage in any work is not supported by clinical data or testing not to mention Dr. Mullen's office notes.  Additionally, while Plaintiff saw Dr. Mullen in 1992 through 2000, the records reflect that she was working during this time and that Dr. Mullen's treatment records fail to reflect that he thought that Plaintiff was unable to engage in any type of work.  The court finds that the ALJ clearly stated his reasons for not crediting Dr. Mullen's conclusory opinion and that the ALJ's decision in this regard is supported by substantial evidence on the record as a whole.    Based on the foregoing the ALJ concluded that Plaintiff had no credible, medically established severe impairment or combination of impairments on or prior to December 31, 2001, and that, therefore, she is not disabled.  The court further finds that the ALJ's analysis is consistent with that required pursuant to Step 2 of the sequential analysis as described above. Because the ALJ determined at Step 2 that Plaintiff did not have a severe impairment or combination of impairments, he was not required to proceed further with the sequential analysis.  Contrary to Plaintiff's argument, the ALJ was not required to proceed with the sequential analysis to determine Plaintiff's Residual Functional Capacity nor was he required to determine whether there is work in the economy which she can perform.  The court finds that the ALJ's decision is consistent with the Regulations and case law and that it is supported by substantial evidence on the record as a whole.

## VI.
## CONCLUSION

The Court finds that the Commissioner's decision is supported by substantial evidence contained in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Brief in Support of Complaint is **DENIED**; [7]

**IT IS FURTHER ORDERED** that the relief sought by Defendant Jo Anne B. Barnhart in her Brief in Support of Answer is **GRANTED**; [8]

**IT IS FINALLY ORDERED** that a separate Judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum and Order.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of March, 2006.